UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ANTHONY JAMES ESPARZA,

    Petitioner,

vs.

WARDEN, et al.,

    Respondents.

Case No. 3:10-cv-00317-LRH-WGC

**ORDER**

    Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#6) and respondents' answer (#14). The court finds that relief is not warranted, and the court denies the petition.

    In state district court, petitioner was charged with one count of sexual assault with a minor under 14 years of age and two counts of lewdness with a child under the age of 14. Ex. 4 (#15). Trial started on November 14, 2005. Ex. 5 (#15). Jury selection took two days. Petitioner did not appear at the start of the second day of jury selection. Ex. 6, at 5 (#15). The trial court proceeded with jury selection and instructed the parties to submit briefs on whether the trial could proceed in petitioner's absence. The parties submitted their briefs. Ex. 7, 8 (#15). After argument, the trial court ruled that the trial would proceed. Ex. 9 (#15). The jury found petitioner guilty on all counts. The trial court issued a bench warrant for petitioner's arrest on November 21, 2005. Ex. 13 (#15). Petitioner was arrested on February 10, 2006. Ex. 13a (#15). Judgment of conviction was entered on April 18, 2006 (#15). Petitioner appealed. The Nevada Supreme Court ruled that one of the counts of lewdness was incidental to the other count of lewdness and must be reversed. Ex. 23, at 6

(#16). The Nevada Supreme Court rejected petitioner's other arguments and otherwise affirmed the judgment of conviction. Id. Petitioner then filed in state district court a habeas corpus petition. Ex. 26 (#16). The state district court denied the petition. Ex. 29 (#16). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 35 (#16).

Petitioner then commenced this action. The court determined that many of petitioner's claims were vague because he did not allege any supporting facts, and the court noted that ground 4 was missing. The court gave petitioner the opportunity to file an amended petition to correct those defects. Order (#5). Petitioner did not submit an amended petition. The court dismissed grounds 1(a), 1(d) through 1(m), 2, 3, 4, 5, and 10. Order (#10). Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on the issues.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state

-2-

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 131 S. Ct. at 786.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.

The two remaining parts of ground 1 are claims of ineffective assistance of counsel. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any

such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (citations omitted).

Ground 1(b) is a claim that trial counsel provided ineffective assistance by instructing petitioner not to attend the second day of the trial and then by misleading the judge into thinking that petitioner had fled to Costa Rica. Ground 1(c) is a claim that trial counsel provided ineffective assistance by failing to obtain a continuance of the trial due to petitioner's absence. The Nevada Supreme Court's rejection of these arguments was summary:

>Appellant fails to provide cogent argument as to how or why the district court erred in denying these claims. "It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court." . . . Therefore, appellant fails to demonstrate that he is entitled to relief.

Ex. 35, at 2 (#16) (citations omitted).

Turning first to ground 1(b), when petitioner was absent at the start of the second day of trial, his attorney stated:

>MR. GOWDEY [defense counsel]: Well, I just want to note that my client did make a comment to me yesterday afternoon or yesterday during jury selection that, gee, maybe Costa Rica is looking good.
>
>I did advise him that I didn't think that was a good idea and that was—that was the extent to my conversation with him about that. I, I assumed he was joking. In retrospect maybe he wasn't. I don't know. . . .
>
>I had no knowledge that my client was not going to be here today.

Ex. 6, at 6 (#15). A short while later was the following exchange:

>THE COURT: Anything else before we bring the jury?
>
>MS. HOLTHUS [the prosecutor]: No. Other than I will point out that it's my understanding that the defendant does have Mr. Gowdey's cell phone number, that Mr. Gowdey in our presence tried numerous times to reach the defendant. We've had our investigator, everybody, looking for him. In terms of if his car broke down he had numbers to call.
>
>MR. GOWDEY: Yeah. The only—the only possible explanation I could have is maybe he's been injured, he's in the hospital, or something else along those lines.

Ex. 6, at 8-9 (#15). At the end of the trial, counsel stated:

>MR. GOWDEY: And I will tell the Court that I've had zero contact with him as well as he's not attempted to contact my office. He's not attempted to contact me personally, through my cell phone—he's got both my telephone numbers.

Ex. 10, at 163 (#15). The record shows that counsel told petitioner it was not a good idea to be absent from the proceedings, that counsel had no idea that petitioner would actually be absent, that petitioner had not tried to contact counsel throughout the trial, and that counsel tried repeatedly to contact petitioner. Petitioner has not presented any support to the contrary. The Nevada Supreme Court's rejection of this claim was a reasonable application of <u>Strickland</u>. 28 U.S.C. § 2254(d)(1).

With respect to ground 1(c), respondents are correct that counsel could not have <u>obtained</u> a continuance or a mistrial, because counsel had no such power. Counsel did <u>ask</u> for a continuance or a mistrial. Ex. 8 (#15). There was nothing else that counsel could have done, and thus counsel did

not provide ineffective assistance. The Nevada Supreme Court's rejection of this claim was a reasonable application of Strickland. 28 U.S.C. § 2254(d)(1).

Ground 6 is a claim that the cumulative errors of counsel warrant relief. Having determined that the remaining two claims of ineffective assistance of counsel are without merit, the cumulative-error claim also is without merit.

Reasonable jurists would not find the court's conclusions on the claims of ineffective assistance of counsel to be debatable or wrong, and the court will not issue a certificate of appealability for the issues.

Grounds 7, 8, and 9 concern Detective Shannon Tooley's interrogation of petitioner. After the victim complained about petitioner's actions, Detective Tooley asked petitioner to come to a police station to answer some questions. Petitioner went to the station, was interrogated, and confessed to the crime. All three grounds are photocopies of petitioner's direct-appeal reply brief. Ex. 22 (#16). Ground 7 contains the introductory paragraphs of the reply brief, which are quotations of Det. Tooley's interrogation that petitioner claims are lies, inducements, and threats. Ground 8 is the part of the reply brief that claims that Detective Tooley violated Miranda v. Arizona, 384 U.S. 436 (1966), because she did not advise petitioner of his rights before interrogating him. Ground 9 is the part of the reply brief that claims that petitioner's confession was involuntary, in violation of the Fifth and Fourteenth Amendments. The court does not consider ground 7 to be an independent claim for relief. Instead, it provides background information that is relevant both to ground 8 and to ground 9.

Petitioner did not object at trial to the introduction of the recording of Det. Tooley's interrogation of him on either grounds of Miranda or involuntariness.[1] Petitioner did raise both grounds on direct appeal.

Regarding the Miranda claim, which is ground 8, the Nevada Supreme Court held:

Second, Esparza argues that his statement to law enforcement was inadmissible because he was not advised of his Miranda rights during police questioning. However, Esparza did not

---

[1] Petitioner did object to the introduction of a copy of the videotape with irrelevant and prejudicial parts redacted, because of lack of foundation. That objection was overruled.

> object at trial to the admission of his confession on this basis, and thus he failed to preserve this issue for appellate review. Nonetheless, we have the discretion to review this matter for plain error. "In conducting a plain-error analysis, we must consider whether error exists, if the error was plain or clear, and if the error affected the defendant's substantial rights." The burden rests with Esparza to show actual prejudice.
>
> The State concedes that the questioning at issue constituted an interrogation, and undisputedly, Esparza was not advised of his Miranda rights. The Fifth Amendment privilege against self-incrimination precludes the admission of a suspect's statements during a custodial interrogation unless the suspect is first advised of his rights. The issue here is whether Esparza was in custody at the time he made incriminating statements.
>
> "Custody," as contemplated by Miranda, "means a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Where there is no formal arrest, the question becomes "whether a reasonable person in the suspect's position would feel 'at liberty to terminate the interrogation and leave.'" In Alward v. State, we enumerated several factors relevant to the custody inquiry: "(1) the site of the interrogation, (2) whether the investigation has focused on the subject, (3) whether the objective indicia of arrest are present, and (4) the length and form of questioning." No one factor is dispositive.
>
> As to the first and second factors, here the interrogation was conducted at a police station located in a business park, the investigation was focused on Esparza, and the questioning lasted one hour and twelve minutes. With respect to the third Alward factor—whether objective indicia of arrest were present, we consider:
>
>> (1) whether the suspect was told that the questioning was voluntary or that he was free to leave; (2) whether the suspect was not formally under arrest; (3) whether the suspect could move about freely during questioning; (4) whether the suspect voluntarily responded to questions; (5) whether the atmosphere of questioning was police-dominated; (6) whether the police used strong-arm tactics or deception during questioning; and (7) whether the police arrested the suspect at the termination of questioning.
>
> Considering these factors, we conclude that the indicia of arrest were not present. In particular, we note that Esparza was not handcuffed, he was advised that he was free to leave at any time and that he did not have to answer any questions, although the detective who questioned him requested Esparza to remain in the interview room while she "check[ed] on something for a minute." Esparza was further advised several times during the interrogation that he was not under arrest and would not be arrested that day. Although the detective used deception during the vigorous interrogation, her tactics were not impermissibly coercive. Based on the totality of the circumstances, we conclude that Esparza was not in custody for Miranda purposes. Consequently, we conclude that he has not demonstrated plain error in this regard.

Ex. 23, at 2-4 (footnotes omitted) (quoting, among other cases, Thompson v. Keohane, 516 U.S. 99, 112 (1995)).

Petitioner has not demonstrated that the factual findings of the Nevada Supreme Court were unreasonable in light of the evidence. 28 U.S.C. § 2254(d)(2). In fact, petitioner never challenged those facts in trial-court proceedings. Petitioner also did not file a reply in this action, in which he

1  could have tried to demonstrate that the Nevada Supreme Court's factual determinations were
2  unreasonable.
3        Petitioner also has not demonstrated that the Nevada Supreme Court's determination that he
4  was not in custody was not contrary to, or an unreasonable application of, clearly established federal
5  law as determined by the Supreme Court of the United States. The Court has held:
6        Two discrete inquiries are essential to the determination: first, what were the circumstances
          surrounding the interrogation; and second, given those circumstances, would a reasonable
7         person have felt he or she was not at liberty to terminate the interrogation and leave.
8  Thompson v. Keohane, 516 U.S. 99, 112 (1995) (footnote omitted). The Nevada Supreme Court
9  recognized that Thompson is the controlling rule for determining when a person is in custody. This
10 is a general rule, requiring consideration of all circumstances, for which state courts have leeway in
11 determining each case. See Alvarado, 541 U.S. at 664 (2004). The Nevada Supreme Court has
12 developed a four-factor test that takes all circumstances into account. Alward v. State, 912 P.2d
13 243, 252 (Nev. 1996), overruled on other grounds by Rosky v. State, 111 P.3d 690 (Nev. 2005).
14 The Alward analysis is consistent with the Supreme Court's statements, and it is similar to analyses
15 by other courts. See, e.g., Dyer v. Hornbeck, 706 F.3d 1134, 1139-41 (9th Cir. 2013).
16 Consequently, the Alward analysis is a reasonable application of federal law. Additionally, the
17 Nevada Supreme Court's analysis of the factors in this case was not an unreasonable application of
18 clearly established federal law as determined by the Supreme Court of the United States. In addition
19 to setting forth the principle that general rules have more leeway in their application, Alvarado
20 involved an issue of whether an interrogation was custodial. The Court summarized earlier cases
21 and the factors that led it to determine that the defendants in those cases were not in custody. 541
22 U.S. at 661-63. The factors that led the Nevada Supreme Court to determine that petitioner was not
23 in custody were similar to the factors that the Supreme Court of the United States outlined in its
24 summary. Unless the facts upon which the Nevada Supreme Court relied are not true, and, to
25 repeat, petitioner has not shown that the factual findings are unreasonable in light of the evidence,
26 the Nevada Supreme Court's determination that petitioner was not in custody was a reasonable
27 application of clearly established federal law.
28

On the issue of whether petitioner's confession was voluntary, which is ground 9, the Nevada Supreme Court held:

> Third, Esparza claims that his confession was inadmissible because coercive tactics were used to obtain it, and it was therefore involuntary. He argues that the detective used strong-arm tactics and misrepresented the evidence against him. "'To determine the voluntariness of a confession, the court must consider the effect of the totality of the circumstances on the will of the defendant.'" Although police deception is a relevant factor in considering the voluntariness of a confession, "an officer's lie about the strength of the evidence against the defendant is, in itself, insufficient to make the confession involuntary." "As long as the techniques do not tend to produce inherently unreliable statements or revolt our sense of justice, they should not be declared violative of the United States or Nevada constitutions." We have reviewed the evidence presented at trial respecting this claim and conclude that the tactics and deception employed in obtaining Esparza's confession were not impermissibly coercive. Accordingly, we conclude that Esparza has not demonstrated plain error in this regard.

Ex. 23, at 4-5 (#16) (footnotes omitted). The Nevada Supreme Court correctly identified that the voluntariness of a confession depends upon all the circumstances surrounding the confession. See Yarborough v. Alvarado, 541 U.S. 652, 667-68 (2004) (citing Schneckloth v. Bustamonte, 412 U.S. 218 (1973), and Lynumn v. Illinois, 372 U.S. 528 (1963)). The Nevada Supreme Court also correctly identified that a police officer's deception is a relevant factor, but does not by itself make a confession involuntary. See Frazier v. Cupp, 394 U.S. 731, 739 (1969). Petitioner has not argued how the Nevada Supreme Court's decision was an unreasonable application of this federal law. The statements that petitioner has highlighted are assertive, but no evidence was presented about petitioner's particular circumstances that would have made him capable of being coerced by the detective's statements. Rather, the prosecutor explained in the closing argument the problem that petitioner faced in that interrogation: The detective laid out for petitioner what the evidence against him was. Petitioner's statement to the detective was consistent with the victim's testimony. For example, petitioner even made the same physical demonstrations that the victim had made in her testimony, and petitioner could not have seen the victim's demonstrations ahead of time. See Ex. 10, at 140-42 (#15). The Nevada Supreme Court reasonably could have concluded that, rather than being coerced, petitioner realized that he had been caught and confessed.

Reasonable jurists might find the court's conclusions on grounds 8 and 9 to be debatable, and the court will issue a certificate of appealability for them.

1    IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus (#6) is

2 **DENIED**. The clerk of the court shall enter judgment accordingly.

3    IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the

4 following issues:

5    1.   Whether the court was correct in its determination that the Nevada Supreme Court reasonably applied clearly established federal law in finding that petitioner was not in custody while he was interrogated.

7    2.   Whether the court was correct in its determination that the Nevada Supreme Court reasonably applied clearly established federal law in finding that petitioner's confession was voluntary.

9    DATED this 10th day of September, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE